[No. 14862. Department One. November 27, 1918.]

SEATTLE & LAKE WASHINGTON WATERWAY COMPANY,
*Respondent*, v. J. P. M. RICHARDS *et al.*,
*Appellants.*[1]

MONEY LENT (2)—VOLUNTARY PAYMENTS—EVIDENCE—SUFFICIENCY.
Where a waterway company had agreed to sell to a bank all cer-
tificates issued for filling tide lands, and advanced the first delin-
quent installment to pay holders of negotiated certificates, the
money could be recovered after the bank foreclosed the certificates
for the full amount, when the preponderance of the evidence was
to the effect that the advance was made at the bank's request to
maintain the credit of similar certificates, under an agreement that
it would be returned when collected from the source primarily liable.

Appeal from a judgment of the superior court for
Spokane county, Henry L. Kennan, judge *pro tempore,*
entered October 3, 1917, upon findings in favor of the
plaintiff, in an action to recover money and to estab-
lish an interest in real property, tried to the court. Af-
firmed.

*Graves, Kizer & Graves,* for appellants, contended,
among other things, that plaintiff's payment was
voluntary and cannot be recovered. 30 Cyc. 1298-1301;
27 Am. & Eng. Ency. Law (2d ed.), p. 255; *Williams
v. Miller & Co.,* 1 Wash. Terr. 88; *Brundage v. Burke,*
11 Wash. 679, 40 Pac. 343; *Phelps v. Tacoma,* 15 Wash.
367, 46 Pac. 400; *Holly Street Land Co. v. Beyer,* 48
Wash. 422, 93 Pac. 1065; *Stahl v. Schwartz,* 81 Wash.
293, 142 Pac. 651; *Traders' & Truckers' Bank v. Black,*
108 Va. 59, 60 S. E. 743; *Schlaefer v. Heiberger,* 4 N.
Y. Supp. 74; *Montgomery v. Gibbs,* 40 Iowa 652;
*Clancy v. McEnery,* 17 Wis. 183; *Wilcox v. Cheviott,*
92 Me. 239, 42 Atl. 403; *Coates v. Clayton,* 23 Tex. Civ.
App. 62, 56 S. W. 118; *McClure v. Trask,* 161 N. Y. 82,
55 N. E. 407; *Devereux v. Rochester German Ins. Co.,*

[1]Reported in 176 Pac. 340.

98 N. C. 6, 3 S. E. 639; *Briggs & Cobb v. Barnett,* 108 Va. 404, 61 S. E. 797; *Merrill v. Gordon,* 15 Ariz. 521. 140 Pac. 496; *Morris v. Tarin,* 1 Dallas (Tex.) 147: *Irvine v. Hanlin,* 10 Serg. & Rawle (Pa.) 219; *Soderberg v. King County,* 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670; Harris, Subrogation, §§ 792, 794, 809, 810; *Whitney Estate Co. v. Northern Assurance Co. of London,* 155 Cal. 521, 101 Pac. 911, 23 L. R. A. 123, 124-127, note; *Charnock v. Jones,* 22 S. D. 132, 115 N. W. 1072, 16 L. R. A. (N. S.) 233, 234. note; *Crumlish's Adm'r v. Central Imp. Co.,* 38 W. Va. 390, 18 S. E. 456, 45 Am. St. 872, 23 L. R. A. 120.

*Donworth & Todd* and *Post, Russell, Carey & Higgins,* for respondent, contended, among other things, that the action lies for money had and received. *Heard v. Bradford,* 4 Mass. 326; *Robert Reis & Co. v. Volck,* 151 App. Div. 613, 136 N. Y. Supp. 367; *Houser v. McGinnas,* 108 N. C. 631, 13 S. E. 139; *Pracht v. Daniels,* 20 Colo. 100, 36 Pac. 845; *Town of Milwaukee v. County of Milwaukee,* 114 Wis. 374, 90 N. W. 447; *Moody v. Northwestern & Pacific Hypotheek-Bank,* 20 Wash. 413, 55 Pac. 568; *Selfridge v. Gill,* 4 Mass. 95; *Catterlin v. Somerville,* 22 Ind. 482; *Hale v. Passmore,* 4 Dana (Ky.) 70; *Soderberg v. King County,* 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670; *Merchants Bank of Port Townsend v. Superior Candy etc. Co.,* 41 Wash. 653, 84 Pac. 604; *Smith v. Gruber Co.,* 81 Wash. 111, 142 Pac. 493.

The doctrine of subrogation is applicable. *Johnson v. Martin,* 83 Wash. 364, 145 Pac. 429, L. R. A. 1916C 1057; *Murray v. O'Brien,* 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998; *Netherlands American Mortgage Bank v. Grafke,* 100 Wash. 188, 170 Pac. 876; *Murray v. Meade,* 5 Wash. 693, 32 Pac. 780; *South Omaha Nat. Bank v. Wright,* 45 Neb. 23, 63 N. W. 126.

The plaintiff was not a mere volunteer. 37 Cyc. 366, 367, 439; *Ketchum v. Duncan*, 96 U. S. 659; *Washington Loan & Trust Co. v. Ritz*, 37 Wash. 642, 80 Pac. 174; *Claflin v. South Carolina R. Co.*, 8 Fed. 118; *Champion v. Investment Co.*, 45 Kan. 103, 25 Pac. 590, 10 L. R. A. 754.

PER CURIAM.—This action was brought by the respondent, Seattle & Lake Washington Waterway Company, against the appellants, J. P. M. Richards and the Spokane & Eastern Trust Company, to recover a sum of money and to establish an interest in realty, the title to which was held by Richards as trustee. There was a recovery in the court below, and the case is before us on the appeal of the adverse parties to the judgment.

The undisputed facts necessary to be recited to an understanding of the controversy are, in substance, these: The respondent is the holder of contracts entered into with the state of Washington for excavating certain waterways and filling above tide water certain tide lands at the city of Seattle. For the performance of the work the respondent receives from the state, through its land commissioner, certificates to the amount of the cost of the work with fifteen per cent added, which, when duly recorded, are first liens upon the lots and blocks of tide land filled. The contracts were entered into early in the state's history and cover a somewhat extensive territory. At the time they were entered into, the state was the owner of the lands, but they have since passed by deeds from the state into private ownership, the deeds being made subject to the rights of the respondent under its contracts. The purchaser of the land, however, assumes no personal obligation to redeem from the lien of the certificates. While he is granted the right to pay off the

lien in ten annual installments with the accumulated interest at a fixed per centum, it is his privilege, not his obligation, to do so; his failure to pay any of the accruing installments only subjects the lien to foreclosure. To raise funds to carry on the work, the respondent sells the certificates. In 1907, it entered into a contract with the appellant Spokane & Eastern Trust Company by which the respondent agreed to sell, and the appellant agreed to buy, at a named discount, all the certificates which might be earned by respondents for filling the tide lands known on the recorded plats as blocks 395, 396, and 398. Those blocks were thereafter filled and certificates issued therefor aggregating a large sum, all of which were taken pursuant to the terms of the contract by the trust company. The trust company did not retain the certificates as an investment of its own, but sold them to its customers, making its profit out of the difference between the amount paid for them and the amount it was able to realize on their sale.

At the time the certificates were earned, all of the lots in block 398 were in private ownership. The first installment upon the certificates issued on these lots became due in September and October of 1908. The sum due on these amounted to $22,562.81. The owners did not meet the payment, and to protect the securities in the market, and perhaps with the idea that the owners might later be induced to pay, the respondent advanced the money to the trust company without requiring a written agreement of any sort, and this sum the trust company accepted and disbursed to the holders of the certificates in accordance with their respective interests.

All of the owners, however, could not be induced to make the payments, and it was found necessary to foreclose certain of the certificates. To this end the

appellant Richards, then the president of the trust company, procured an assignment of the certificates from the purchasers to himself as trustee, and a foreclosure proceeding was instituted in his name as plaintiff. In the complaint he alleged that nothing had been paid upon the certificates, and the prayer of the complaint was for a decree in accordance therewith. While one Bussell, an owner, defended, he did not set up a plea of payment, and decree was entered in the proceeding foreclosing the lien of the certificates for the amount shown to be due without deducting the amount of the advancement made by the respondent. The lands were subsequently sold under the foreclosure decree, a part for cash to third parties, and the remainder to Richards as the judgment creditor. The cash received amounted to $25,680.15. This sum and the amount bid by Richards, which was credited on the decree, satisfied the decree in full.

It was to recover a *pro rata* share of the cash received at this sale and to establish an interest in the real property purchased by Richards that the present action was instituted; the respondent claiming that it was entitled to such proportionate share of the money and property received by Richards in virtue of the foreclosure action as the amount advanced by it on the first installment due on the certificates foreclosed bore to the entire amount due thereon. The judgment of the court embodied the view taken by the respondent.

The appellants pleaded in defense of the action that no agreement was entered into between the parties for the repayment of the sum advanced, and that no obligation rested upon them so to do; further alleging that the advancement was made by the respondent for its own protection, in that it was important to it that the certificates should not be discredited among in-

vestors on whom it depended to market certificates which it had theretofore issued and thereafter contemplated issuing, invoking the rule relating to voluntary payments. While the recitals we have made may cause it to appear that the defense has no very strong moral support, since its effect, if established, would be to cause a loss to the respondent of the sum advanced and an apparently corresponding unearned gain on the part of the appellants, the evidence disclosed that the matter was not entirely one-sided in this respect. The circumstances concerning this need not be detailed. It is sufficient to say that actions were begun by one of the owners of the filled tide lands against the respondent the effect of which, if successful, would be to scale the face value of the certificates; that these actions were apparently going against the respondent, when the appellants, being perturbed thereby, employed counsel of their own to assist in their defense, expending in that behalf and in costs incidental thereto a sum in excess of $13,000, which sum has in no way been returned to them. While this transaction on the part of the appellants, since it was voluntary, does not constitute a defense; legal or equitable, to the money or property sought to be recovered, it explains why the contest is made, and relieves the defense of that moral obliquity which perhaps might otherwise seemingly attach to it.

The actual controversy, therefore, hinges on the question whether the payment was voluntary or involuntary; that is, whether it was made under an agreement, express or implied, that it should be returned to the respondent when collected from the source primarily liable. The parties have brought much into the record in support of their respective contentions. On the part of the appellants, is the fact that the respondent first tendered the money with a written

agreement attached to the effect that a repayment would be made when collected from the primary source, and that this was refused by the appellants. Further, it was shown that the payment was under consideration at a time when the parties were negotiating concerning a contract for the sale of other certificates, and that this latter contract was executed simultaneously with the payment of the delinquency, the inference drawn being that the one was the inducement for the other. It was the testimony, also, of the only witness present at the time of the adverse claim of the money, aside from the principals participating therein, that nothing was said at that time concerning the transaction other than a statement of the respondent's representative that the money advanced, in so far as the trust company or the holders of the certificates were concerned, was a payment by the landowner, but, as a matter of fact, the money was actually advanced by a subsidiary company of the respondent, and if later the trust company could, through its good offices, have the money returned, it would be appreciated; that no reply to this statement was made, and no promise or agreement of any sort with respect to returning the money was made or entered into. The appellant Richards had no recollection of the transaction; his testimony was that, after the money was paid over, the new contract executed, and the parties had separated, he directed the witness mentioned to make a memorandum of the conversation and file it with the papers relating to the transaction, and that he did not charge his memory with the matter further.

On the other side, circumstances were shown tending to show that the first tender was refused, not because of the agreement to repay, but because it brought into the transaction third parties with whom the appellants did not wish to become bound; their desires

being to confine the transaction to the immediate parties in interest. As to the second proposition, it is said that the appellant trust company was as desirous of the new contract as was the respondent, and that the certificates which it had theretofore sold might not appear to be in default was chiefly, if not wholly, its concern, as the respondent had been engaged in the business for many years and had issued and sold many thousands of dollars in similar certificates, some of which had been in default without a serious impairment of the market for them; and that it was because of the appellants' earnest solicitation that the advancement was made. The testimony of the respondent's representative at the transaction in which the money was paid over does not differ essentially from the version given by the appellants' witness. He, however, refers to a number of other conferences between himself and Mr. Richards, and from the whole testifies that there was a clear understanding between the parties that the money was an advancement and not a payment, and was to be returned when collected from the primary source. It was shown, also, that one lot included in the delinquent list was owned by a man named Neville, and that the money paid to the appellant trust company included the delinquency on this lot. Afterwards, but prior to the foreclosure proceedings, Neville paid to the trust company the delinquent installments, two in number.

Shortly after the payment, Mr. Williams, a representative of the appellant trust company, was in Seattle and took up with the respondent's manager the matter of the payment and the manner in which the respondent's share should be returned, the money advanced having been made by a subsidiary company of the respondent. Mr. Williams was unable to recall the conversation, but the manager testified that it was

agreed that the particular payment should be sent to Mr. Parry, as trustee, and that all subsequent payments on block 398 should be handled in the same way. The respondent's share of this payment, measured by the sum turned over to the trust company, was $468.78, and this sum Mr. Williams forwarded on his return to Spokane, accompanied by the following letter:

"Spokane and Eastern Trust Company.
                    "Spokane, Wash., April 25, 1910.
"Mr. Edgar Ames, 1101 Alaska Building,
        "Seattle, Washington.
    "Dear Sir: According to our conversation of a few days ago, I am enclosing herewith a letter addressed to Mr. Will H. Parry, Trustee, with cashier's check attached for $468.78. Kindly acknowledge receipt at your convenience, and oblige. Very truly yours,
                            "H. F. Williams,
                    "Manager Securities Department."

Many other circumstances were introduced by the parties in support of their respective contentions, but we think it would profit nothing to review the matter further. Enough is set forth to show the nature of the controversy, and that to array and discuss the evidence would be but an attempt to vindicate a conclusion reached on a disputed question of fact, interesting, perhaps, with reference to the particular controversy, but in no way valuable as a precedent. It is the opinion of a majority of the department that a preponderance of the evidence supports the conclusion reached by the trial court that the advancement was not voluntary in the sense that it was made without an agreement for its return. Within the view of the facts, there is no error in its judgment. The conclusion also renders it unnecessary to notice the legal questions discussed, which a contrary view of the facts might require.

The judgment will stand affirmed.